IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

JAMES L. WENZEL,  Case No. 1:15-cv-01371-CL

    Plaintiff,

v.

KLAMATH COUNTY FIRE
DISTRICT NO. 1, et al,  **ORDER**

    Defendants.

CLARKE, Magistrate Judge

    Plaintiff James Wenzel brings claims against the defendants, Klamath County Fire District No. 1, ("KCFD1"), the KCFD1 Board of Directors ("Board"), attorney Stephen Hedlund, and private investigator Jim Toddy. Plaintiff alleges that he was wrongfully terminated in violation of his due process rights, and related state law claims.

    The case comes before the Court on various discovery disputes. For the reasons below, Plaintiff's Motion for Clarification or Reconsideration (#97) is DENIED. Plaintiff's request for production of the August 6, 2013, Executive Session audio recording is GRANTED in part and DENIED in part. The other disputes are resolved as stated below.

## BACKGROUND

    The factual background of this case has been thoroughly discussed in previous opinions by the Court and briefing by the parties. The Court will only briefly review it here. Plaintiff James Wenzel was the Fire Chief of Klamath County Fire District No. 1 (KCFD1) for six years from January 2008 to December 31, 2013. He alleges an exemplary work history.

The KCFD1 Board of Directors is a defendant in this case, which arises out of the Board's decision not to renew, or to terminate, Plaintiff's contract as Fire Chief of KCFD1.

Defendant Stephen Hedlund is an attorney in private practice; he was retained as an independent contractor attorney to KCFD1 and the Board. Plaintiff claims Hedlund went out of his way to try to damage Wenzel's annual performance review, and he began making unfounded accusations against Wenzel, which lead to a flawed employment investigation, a false report that damaged his personal and professional reputation, and ultimately, termination of his position.

Defendant Jim Toddy is a private investigator who was hired by the Board to conduct an investigation of Plaintiff Wenzel during the spring and summer of 2013. Plaintiff alleges that Toddy was a close personal friend and associate of Hedlund, that Toddy took direction from Hedlund, and that the two of them conducted an intentionally biased investigation in order to create a damaging report. Plaintiff alleges that the investigation was biased, incomplete, and poorly conducted. He alleges that he was not given a chance to respond to any of the accusations or produce evidence or witnesses to support his position.

In a report dated June 24, 2013 ("Toddy Report"), Toddy set out his findings. Plaintiff alleges that these findings included "a multitude of false, misleading, and highly derogatory statements concerning Wenzel." Plaintiff alleges that the report was "replete with harsh negative judgments about Wenzel" and "vitriolic personal commentary about Wenzel" that was "unfounded and unwarranted," and displayed a "shocking and inappropriate level of personal animosity against Wenzel." Plaintiff further alleges that the Toddy Report was the first notice he had regarding the specific accusations against him. He claims he promptly requested an opportunity to respond to the accusations, but that he was never given a hearing concerning the Toddy Report.

On August 6, 2013, the KCFD1 Board held a meeting and executive session to seek legal counsel from attorney Hedlund, and to discuss the Toddy Report. On or about August 19, 2013 the KCFD1 Board held a meeting to vote on whether to terminate Wenzel's employment. Wenzel was not given an opportunity to be heard concerning the Toddy Report, but he did submit a written response, and he asked again to be given a full hearing on the accusations. Plaintiff was not allowed to participate in the August 19 Board meeting, but he alleges that Hedlund encouraged and advised the Board to terminate his employment. The following day, Plaintiff received written notice of his termination. Pursuant to the August 20 notice, Plaintiff Wenzel's employment with KCFD1 was to terminate on December 31, 2013. After receiving the notice, Plaintiff renewed his requests for a hearing. Plaintiff alleges that Hedlund and the Board indicated to him that he would be allowed to get a hearing, but "in a letter dated December 6, 2013, signed by Hedlund, the request for a hearing was denied."

## DISCUSSION

The parties have a variety of disputes for the Court to resolve. Of them, the most important is the dispute over whether or not the audio recording of the August 6, 2013, Executive Session meeting of the KCFD1 Board of Directors is discoverable. Defendants claim that the recording is privileged and not subject to disclosure. The Court agrees, but only in part. As discussed below, any portion of the recording in which attorney Hedlund is speaking, or being asked a direct question by a member of the Board, should be redacted. However, any part in which a member of the Board is discussing his or her reaction or view of the Toddy Report, and the report's impact on that person's evaluation of Plaintiff's continued employment is discoverable and should be disclosed.

### I. Audio Recording of Executive Session on August 6, 2013 is ordered to be produced in part.

On August 6, 2013, two weeks after receiving the Toddy Report, the KCFD1 Board of Directors met in public session, and then closed the meeting to the public and met in an Executive Session with their attorney, defendant Hedlund. The audio recording of that executive session has been submitted for *in camera* review by the Court. Defendants claim that the recording is privileged.

The purpose of the Public Meetings Law is to ensure government transparency in Oregon:

> The Oregon form of government requires an informed public aware of the deliberations and decisions of governing bodies and the information upon which such decisions were made. It is the intent of ORS 192.610 to ORS 192.690 that decisions of governing bodies be arrived at openly.

ORS 192.620. To that end, the law regulates the decision-making process of "governing bod[ies]" of "public bod[ies]."

The law ensures transparency in government primarily through two complementary mechanisms, which are contained in ORS 192.630. First, ORS 192.630(1) requires that any "meeting" of a governing body of a public body be open to the public, unless the topic of the meeting is one that the legislature has said may be addressed in an "executive session" or the meeting is of the sort that is exempted from the Public Meetings Law under ORS 192.690. ORS 192.630(1); ORS 192.660; ORS 192.690. A "meeting" is a "convening of a governing body of a public body for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter." ORS 192.610(5). An "executive session" is "any meeting or part of a meeting of a governing body which is closed to certain persons for deliberation on certain

matters." ORS 192.610(2). ORS 192.660 regulates governing bodies' use of executive sessions and identifies the subjects that a governing body may consider in executive session.

Second, ORS 192.630(2) restricts the ability of the members of a governing body to meet outside of the context of a formal "meeting" in order to deliberate or make a decision: "A quorum of a governing body may not meet in private for the purpose of deciding on or deliberating toward a decision on any matter except as otherwise provided by ORS 192.610 to 192.690." ORS 192.630(2). The net effect of those two mechanisms is that a quorum of a governing body cannot meet to deliberate or make a decision in private unless ORS 192.660 authorizes it to do so in an executive session of a meeting or if ORS 192.690 otherwise excludes the governing body from the application of the Public Meetings Law. *See Handy*, 274 Or. App. at 659, 362 P.3d 867 ("The legislature was not content to require that 'meetings' be made open to the public; rather, to achieve the statutory purpose, the legislature felt the need to regulate the conduct of public officials in less formal settings.").

In relevant part, under ORS 192.660, the governing body of a public body may hold an executive session:

> (b) To consider the dismissal or disciplining of, or to hear complaints or charges brought against, a public officer, employee, staff member or individual agent <u>who does not request an open hearing</u>.
> . . .
> (h) To consult with counsel concerning the legal rights and duties of a public body with regard to current litigation or litigation likely to be filed.
> (i) To review and evaluate the employment-related performance of the chief executive officer of any public body, a public officer, employee or staff member <u>who does not request an open hearing</u>.

ORS 192.660(2) (emphasis added).

Provision (2)(h) is applicable in this case because the Board entered in to Executive Session to consult with counsel, attorney Hedlund, regarding the legal issues surrounding Plaintiff Wenzel's employment as Fire Chief. While it is questionable whether or not litigation could have been "anticipated" at this early date, after *in camera* review, the Court is satisfied that Hedlund was providing legal counsel to the Board members regarding Plaintiff's employment, and that Hedlund's advice was not waived by the crime-fraud exception or any other exception or waiver. The ability of the governing body of a public body to meet privately with its attorney to discuss legal matters is important and should be protected. All discussions regarding Hedlund's legal advice, and questions asked by the Board members to Hedlund, are privileged and not subject to disclosure to Plaintiff.

However, it is undisputed that Plaintiff Wenzel in this case did request an open hearing regarding the Toddy Report, which was distributed to the Board roughly two weeks prior to the August 6 meeting. Therefore provisions (2)(b) and (2)(i), which might otherwise apply to this situation, are inapplicable. All discussions of the Toddy Report and deliberations regarding Plaintiff Wenzel's employment as it relates to the Toddy Report should have been held in open session according to his request and the Public Meeting Laws of Oregon.

For instance, at or about minute 5:15, a woman, presumably Ms. Storey, says: "Let me ask the directors, did you have a chance to review the [- - -][1] from the investigation?" The recording is difficult to completely understand, but it is clear that she goes on to discuss the Toddy Report and the evidence against Plaintiff Wenzel, including staff interviews and other reports, with the other members of the Board. Such deliberations are not in furtherance of

---

[1] Recording unclear or unintelligible.

receiving legal advice and should be produced.[2] Similarly, at about minute 16:25 another member of the Board interjects to give his reaction and views on the Toddy Report and Plaintiff's continued employment.[3] By contrast, just before minute 12:00, Ms. Storey asks Hedlund a legal question. The question and the response are privileged and not subject to discovery.

The statements made by the Board members regarding their consideration of the Toddy Report and Plaintiff's employment are directly related to Plaintiff's allegations in this case, and they are central to the litigation. Therefore the comments made by Ms. Storey and other members of the Board regarding their reactions to the Toddy Report, the underlying reports and interviews, and the overall investigation by Toddy, are all discoverable, and should be disclosed to Plaintiff immediately.

## II. Additional Executive Session audio recordings.

The defendants were ordered to provide any audio recordings for which a privilege was claimed for *in camera* review on September 14, 2016 (#68). Defendants did not submit any recordings at that time, nor did they submit any after Judge Aiken's Order affirming that decision on January 18, 2017 (#90). Thus, a persuasive argument for waiver of the privilege exists as to all unproduced audio recordings. While the Court declines to automatically waive the privilege at this time, the defendants are encouraged to work with Plaintiff cooperatively in light of this failure to previously comply with the Court's order. If the defendants believe that any of the recordings should be protected they should immediately submit them for *in camera* review.

## III. Remaining issues for Court resolution.

---

[2] Hedlund begins speaking at about minute 7:35, ending that segment of Board deliberations, and beginning a portion that consists of legal advice that is not discoverable.

[3] The end of the discoverable segment here would be about a minute later when he states that the evidence from the letter is "clear-cut." After that he asks Hedlund a question, which is solicitation of legal advice, and not subject to discovery.

Page 7 – ORDER

### a. Authentication of documents produced in discovery is to be resolved by the parties.

As indicated in the Court's Order of March 3, 2017 (#105), the parties are encouraged to agree to any non-controversial authentication of documents produced in discovery. Admissibility of documents will be addressed at a pretrial conference should the case go to trial.

### b. Requests for admissions and request for production should be answered, but documents already determined to be privileged should not be produced.

If timing is the only objection by the defendants, all requests for admissions and requests for production served before the discovery cutoff should be answered promptly. The parties are instructed to complete discovery as quickly and as thoroughly as possible to move the case towards a resolution on the merits.

To the extent that Plaintiff requests production of documents already provided to the Court for *in camera* review, and already determined to be privileged, Plaintiff's motion for reconsideration is denied (#97). The Court was able to determine that all records provided for *in camera* review are protected by the attorney client privilege and that the privilege was not waived by the crime fraud exception, the Public Meetings Laws, or any other exception or waiver of the privilege. This includes the draft letters created by attorney Hedlund, and the communications between Hedlund and the insurer. The Court does not find the dual-representation argument persuasive.

### c. Telephone records cannot be produced if they do not exist.

Plaintiff requests telephone records for the use of Plaintiff's desk telephone. Defendants cannot produce records that do not exist. The same applies to Plaintiff's requests for receipts and expense reports submitted to KCFD1 in support of Wenzel's response to the internal investigation conducted by Toddy. To the extent that Plaintiff has evidence that defendants

engaged in spoliation, Plaintiff may argue for an instruction at trial or file a motion for sanctions. Otherwise the issue is moot.

## ORDER

Based on the foregoing, Plaintiff's Motion for Clarification or Reconsideration (#97) is hereby DENIED. Plaintiff's request for production of the August 6, 2013, Executive Session audio recording is GRANTED in part and DENIED in part. The other disputes are resolved as discussed above.

ORDERED and DATED this 14 day of March, 2017.

MARK D. CLARKE
United States Magistrate Judge